IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**NAKIA WILLIAMS,**                                                        **PLAINTIFF,**

**VS.**                                            **CIVIL ACTION NO. 4:06CV188-P-S**

**DAIMLER CHRYSLER CORPORATION and**
**TRW-OCCUPANT RESTRAINT SYSTEMS/**
**MESA,**                                                    **DEFENDANTS.**

**MEMORANDUM OPINION**

Theses matters come before the court upon Defendant TRW-Occupant Restraint Systems/Mesa's motion to exclude the expert testimony of Brian Smith [88] and Defendant Daimler Chrysler Corporation's joinder therein and separate motion to exclude the testimony of Brian Smith and Douglas Van Sweden [93]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

**I. FACTUAL BACKGROUND**

This product liability action arose from a head-on collision that occurred on U.S. Highway 61 near Hollandale, Mississippi on September 24, 2004. Nakia Williams was driving a 2000 Dodge Stratus northbound on the two-lane highway and, when she attempted to pass an eighteen wheeler, she collided with an on-coming 1998 Lexus LS400. Each was driving approximately 55 miles per hour. The front of Williams' vehicle was crushed and she was pinned between the steering wheel and her seat until bystanders extricated her shortly before her vehicle caught on fire.

On September 11, 2006 Williams filed a products liability lawsuit against Daimler Chrysler Corporation ("Chrysler") and TRW-Occupant Restraint Systems/Mesa ("TRW") in the Circuit Court of Washington County, Mississippi. The Complaint alleges that the airbag was defective, there were

inadequate warnings regarding the airbag, and that the 2000 Stratus was not crashworthy because it caught on fire. The Complaint levies the following causes of action: (1) negligence; (2) products liability; (3) violation of consumer protection act; (4) gross negligence; (5) intentional tort / conduct; and (6) breach of contract.

On November 8, 2006 the defendants removed the action to federal court citing federal diversity jurisdiction.

According to the plaintiff in her response to the instant motions, she designated Brian Smith, Ph.D. as an expert to give opinions that the airbag warning was defective, the ergonomic design of the front passenger compartment was improper, and the airbag itself was defective. The plaintiff also designated Douglas Van Sweden as an expert regarding the origin and cause of the fire, which he attributes to a defective power steering hose.

TRW and Chrysler both move to exclude pursuant to Fed. R. Evid. 702 all of the testimony of Brian Smith, arguing that he is not qualified to give his opinions, his opinions are irrelevant and unreliable, and he failed to provide a complete expert report containing all of his opinions and bases therefor. Chrysler also moves to exclude the testimony of Douglas Van Sweden, arguing that his opinions are speculative and unreliable.

The court observes that the briefing history reflected on the docket is improper in several respects. The motions deadline passed on June 6, 2006, and although Chrysler filed a joinder in TRW's motion to exclude on June 6, 2006, the motion was only a few pages long and asked for additional time to supplement. Without being given permission to supplement, Chrysler than filed a first supplement on June 13, 2008 asking for permission for more time to further supplement. Chrysler filed a second supplement on June 18, 2008, once again without permission to do so and

once again asking permission to supplement once more. Finally, Chrysler filed a 61-page brief on June 19, 2008 without having been given permission to supplement or to exceed the 35-page limit by 26 pages. Practically speaking, this unusual briefing behavior has resulted in Chrysler filing a 61-page brief thirteen days after the motions deadline. The plaintiff's briefing behavior is equally bizarre. The plaintiff filed five separate responses to the motions to exclude, all of which were sparse in verbiage, analysis, and authorities, and all of which were essentially identical. Each response attached new information such as deposition transcripts, expert reports, etc.

The proper way to brief in federal court is to file a motion and a memorandum brief, if necessary, and to attach thereto one's exhibits. It is permissible to file a combined motion and brief rather than two separate documents. One should file a motion in a timely manner and if one needs to file additional material after the deadline, one must get permission before doing so. If one needs to exceed the 35-page limit, one must receive permission before filing the brief. After a motion and supporting brief are filed, the opposing party must then file one brief in response with all of his or her exhibits attached thereto. If one needs to supplement, one must ask permission to do so first. The original movant may then file a reply. With permission, the opponent may file a surrebutal. Following this protocol allows the timely and efficient adjudication of a motion and saves the court from having to piece together fragmented and piecemeal filings.

Though the court was inclined to strike all of the briefing and instruct that the motions and responses thereto be refiled in a proper manner, the motions deadline has passed and ultimately it is the court's duty as the "gate-keeper" to determine whether the opinions of Smith and Van Sweden conform to the requirements of Rule 702. Therefore, the court has considered the briefs as filed.

## II. DISCUSSION

**A. Rule 702 Standards**

Fed. R. Evid. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The current text of Rule 702, as amended in 2000, reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals., Inc..*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). "In Daubert the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in Kumho clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." Advisory Committee's Note on 2000 Amendment of Fed. R. Evid. 702.

For the court to be the arbiter of the validity of a given scientific theory is indeed a heavy burden. As Judge Kozinski observed:

Our responsibility then, unless we badly misread the Supreme Court's opinion [in *Daubert*], is to resolve disputes among respected, well-credentialed scientists about matters squarely within their expertise, in areas where there is no scientific consensus as to what is and what is not 'good science,' and occasionally to reject such expert testimony because it was not 'derived by the scientific method.' Mindful of our position in the hierarchy of the federal judiciary, we take a deep breath and proceed with this heady task.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1316 (9th Cir. 1995).

Ultimately, the district court must "ensure that any and all scientific testimony or evidence

4

admitted is not only relevant, but reliable." *Daubert.*, 509 U.S. at 589. Under the familiar *Daubert*/*Kumho* standards and their progeny, it is not the court's duty to determine in a motion in limine to exclude an expert's testimony whether the expert in question is correct. This decision falls squarely within the province of the jury. Essentially, the court is the gate-keeper charged with determining whether the expert's testimony is reliable and relevant enough to not be junk science or mere paid-for opinions.

There are many factors to consider in whether to open the gate to an expert. These factors begin with Fed. R. Civ. P. 26(a)(2)'s provisions regarding expert reports. Next come the primary factors under Fed. R. Evid. 702. To aid in considering the essentials of Rule 702, the decision in *Daubert* set forth several factors the courts should consider in its gate-keeping function. The Advisory Committee's Note on the 2000 Amendment of Rule 702 sets forth additional factors. For the purpose of clarity, the court will set forth all of the factors germane to considering whether to open the gate in the following manner:

> **Fed. R. Civ. P. 26(a)(2)**
>
> 1. Did the expert turn in an expert report?
>
> 2. Did the expert report contain:
>
>> (a) a complete statement of all opinions?
>> (b) the basis and reasons therefor?
>> (c) the data considered in forming the opinion?
>> (d) any exhibits to be used as a summary of opinions?
>> (e) the qualifications of the witness?
>> (f) publications authored by witness in the last 10 years?
>> (g) compensation
>> (h) other cases in which the expert has testified in the last 4 years?
>
> 3. Were the expert disclosures made at least 90 days before trial? Or in the case of rebuttal evidence, within 30 days before trial?

4. Were the opinions supplemented pursuant to FRCP 26(e)(1) (with respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty [to supplement] extends to both information contained in the report and to information provided through a deposition of the expert and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due – usually 30 days before trial)?

**Fed. R. Evid. 702**

5. Is the witness qualified by knowledge, skill, experience, training, or education?

6. Is the testimony based on sufficient facts?

7. Is the testimony the product of reliable methods?

8. Did the witness apply those methods to the facts reliably?

*Daubert* **factors in determining Rule 702 requirements**

9. Can or has the theory/technique been tested? Can the theory/technique be challenged or is it a subjective, conclusory approach?

10. Is the theory/technique subject to peer-review or publication?

11. Is there a known or potential rate of error of the theory/technique when applied?

12. Were standards and controls used?

**Advisory Committee Notes to 2000 Amendment of FRE 702 factors**

13. Did the theory arise from litigation or independent research?

14. Is there "too great an analytical gap between the data and the opinion proffered," that is, does the theory "fit" with the facts of the case? *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

15. Did the expert adequately consider alternative explanations?

16. Was the expert "as careful as he would have been in his regular professional work outside his paid litigation consulting"? *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).

17. Is the expert's field of expertise known to reach reliable results for the type of opinion proffered?

"[A] trial judge *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability ... the test of reliability is 'flexible,' and *Daubert*'s list of specific *factors neither necessarily nor exclusively applies to all experts or in every case.*"*Kumho*, 526 U.S. at 141 (1999) (emphasis in original). "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho*, 526 U.S. at 152. The district court has wide discretion in determining the admissibility of expert testimony, and its decision will be disturbed only for abuse of discretion. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998).

**B. Brian Smith, Ph.D.**

Dr. Smith's expert report is one-page in length. As discussed above, the plaintiff has indicated that she designated Dr. Smith as an expert to give the opinions that the air bag warning was inadequate, the ergonomic design of the front passenger compartment was improper, and the air bag itself was defective. The defendants point out correctly that Dr. Smith's opinion regarding the ergonomics of the passenger compartment was not contained within his report.

The report indicates that his opinions are based upon photographs of the subject vehicle, a crash report, and medical records. He states: "After reviewing the reports and the injuries of Ms. Williams's accident my opinions are based on a reasonable degree of engineering certainty and will be refined as more evidence is obtained." The remainder of the report briefly discusses his opinion that the inflation of the air bag contributed to the plaintiff's burn injuries because (1) she sat too close to the steering wheel and was not properly warned in the Owners Manual; and (2) the "air bag

could have been modified to unfold in a different manner and at different rates with cooler propellants or insulated more from the propellants to prevent burns to the face and bone breaking forces to the face." It is undisputed that Dr. Smith never inspected the actual vehicle, its air bag, or any exemplars of an air bag in reaching his opinions.

As stated above, Fed. R. Civ. P. 26(a)(2) requires the expert to turn in a report that contains, among other things, a **complete** statement of all opinions containing the basis and reasons therefor and the data considered in forming the opinion. "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel-before the deposition-as to what the expert witness will testify...." *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008). "The purpose of the rule [26(a)(2)] is to eliminate 'unfair surprise to the opposing party.'" *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (citing *Sylla-Sawdown v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995))."[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

Thus Rule 26(a)(2) required Dr. Smith to turn in a report with a complete statement of all his opinions, as well as reasons for the opinion, the data upon which he based those opinions, and the methodology he used to arrive at those opinions. In other words, Rule 26(a)(2) required Dr. Smith to show his work, which he did not. Furthermore, Rule 26(e)(1) required Dr. Smith to supplement his report to include any new opinions – *i.e.*, his opinion regarding the ergonomics of the passenger compartment – which he also did not do.

Under Rule 37(c)(1), if a party fails to disclose the information required by Rule 26(a)(2), its expert may not testify as to that information – "unless such failure is harmless."

The court concludes that Dr. Smith's report did not comply with Rule 26(a)(2) because it failed to provide a complete statement of his opinions along with his data, reasoning, and methodology. Essentially, the report reveals the mere *ipse dixit* of Dr. Smith rather than the required level of analysis. The failure was not harmless and clearly prejudiced the defendants. Thus, the report should be stricken pursuant to Rule 37(c)(1). Furthermore, since the deadline to supplement Dr. Smith's expert report has long-passed, his testimony should be excluded because the plaintiff cannot meet her burden in demonstrating that Dr. Smith's testimony complies with the Rule 702 factors discussed above.

In any event, the proponent of expert testimony has the burden of showing that the testimony is reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The plaintiff's multiple, identical responses filed to the motions to exclude the plaintiff's experts are almost completely devoid of authorities and analysis. The responses proffer mere conclusory statements. Accordingly, the court concludes alternatively that the plaintiff has not met its burden in showing that Dr. Smith's testimony is reliable, therefore, his testimony should be stricken for that reason in addition to the failure to comply with Rule 26(a)(2).

**C. Douglas Van Sweden**

Similarly, the sum total of the plaintiff's response to Chrysler's motion to exclude the testimony of Douglas Van Sweden, the plaintiff's fire cause and origin expert, is two paragraphs in her response filed on June 20, 2008 and five paragraphs in her June 30, 2008 response. These paragraphs state in a conclusory manner that Van Sweden is qualified by his experience and

education, he has been admitted as an expert in fire origins in numerous federal and state cases, and has submitted a report concluding that the fire in the subject vehicle originated at the power steering system and that the cause of the fire was the failure of the power steering hose which leaked fluid onto a hot engine component resulting in the fire. The plaintiff cites scant authority and virtually no analysis or specific rebuttals to points raised in Chrysler's thorough brief. The plaintiff's response is clearly inadequate to sustain the plaintiff's burden in demonstrating that Van Sweden's testimony will be reliable pursuant to Rule 702.

In any event, Chrysler's motion to exclude the testimony of Douglas Van Sweden should be granted on the merits. Although the witness is qualified by knowledge, experience, and education to render opinions regarding fire cause and origin, his testimony is not based on sufficient facts, nor is the testimony the product of reliable methods.

The following salient facts are undisputed. Plaintiff counsel initially hired Mr. Van Sweden to drive to Jackson, Mississippi to inspect the subject vehicle for possible air bag malfunction. This inspection occurred in May 2006. After his one-hour inspection, which consisted of walking around the vehicle and taking 31 photographs of it, while not including a close inspection of the components under the hood or under the vehicle, Mr. Van Sweden was surprised to see that the vehicle had been partially burned. He concluded at that time that this was not an air bag case, but rather a fire case and told plaintiff counsel as much. Some time in September 2006, some four months after Mr. Van Sweden's visual inspection of the vehicle, he learned of a recall involving a faulty power steering hose that could cause a fire. He did not, however, return to inspect the vehicle or to specifically inspect the power steering components. Nor did he confirm whether or not the subject power steering hose has been replaced per the recall. Nor did he examine any exemplars of the allegedly

10

faulty power steering hose. Because he did not inspect the vehicle well after learning of the recall, he did not physically inspect whether other automotive fluids could have been involved as a cause of the fire. What is more, Mr. Van Sweden wrote his report stating that the fire was caused by the power steering hose approximately 18 months after his May 2006 inspection and 14 months after he discovered the power steering hose recall on the NHTSA website.

Furthermore, he did not use the National Fire Protection Agency's 921 protocol (found in NFPA's *Guide for Fire and Explosion Investigators* (2004 ed.)), but rather used his own methodology. Though there is no law requiring use of the NFPA 921 fire origin and cause protocol, the method described by Mr. Van Sweden in his deposition has not been peer-reviewed, nor published and falls well short of the protocol described in the NFPA 921 protocol as outlined by Chrysler in their thorough brief.

As to the other factors outlined above, the plaintiff has not demonstrated that Mr. Van Sweden's theory has been tested, that his theory has been subjected to peer-review or publication, that there is a known or potential rate of error of the theory when applied, or that adequate standards and controls were used. It is undisputed that the theory arose from litigation and not independent research. Finally, Mr. Van Sweden's failure to re-inspect the vehicle specifically regarding his power steering hose theory resulted in a failure to adequately consider alternative explanations.

For these reasons, the court concludes that Mr. Van Sweden's testimony in his report and deposition are the mere *ipse dixit* of Mr. Van Sweden. Although qualified to render such opinions, Mr. Van Sweden did not use reliable methods to render his opinions nor did he base his opinions on sufficient facts. Accordingly, his testimony should be excluded for failure to conform to Rule 702 standards and the additional *Daubert* / *Kumho Tire* factors.

## III. CONCLUSION

For the reasons discussed above, the court concludes that Defendant TRW-Occupant Restraint Systems/Mesa's motion to exclude the expert testimony of Brian Smith [88] and Defendant Daimler Chrysler Corporation's joinder therein and separate motion to exclude the testimony of Brian Smith and Douglas Van Sweden [93] should be granted. Thus, the testimony of Brian Smith, Ph.D. and Douglas Van Sweden should be excluded for failure to conform to Fed. R. Evid. 702 standards. Accordingly, an Order shall issue forthwith,

**THIS DAY** of July 18, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE